Mr. Maloro, please proceed. Thank you, Your Honor, and may it please the Court, the judgment of infringement of the 298 patent should be reversed because it was based on an erroneous claim construction. I'd like to turn to the language of Claims 24 and 27, going first to Claim 24, and explain how the claim language is pieced together in a way which results in a single isoform. As a general starting point, can I ask you, since Claim 24 and 27 are predicated on different arguments in this case, if we were to affirm across the board on either one of them, that would end the case without the need to address the other, is that right? If the affirmance across the board was on either Claim 24 or Claim 27, then yes, that would end the case on the 298 patent. Across the board, meaning not just the Markman issues, but the other Jamal issues on infringement, exactly, with respect to those issues. Now, with respect to three pieces to the claim that show that you get a single isoform, you start by the introductory clause, a method of preparing, and I'm just going to call it EPO today, a method of preparing EPO molecules. And so then the question is, how are those EPO molecules characterized and required in the claim? First, those EPO molecules having a predetermined number of sialic acids per molecule. And then there's an important Marcouche limitation, that those molecules have a predetermined number of sialic acids, said number selected from the group consisting of 1 to 14. So that closed Marcouche language tells us that all of the molecules have a predetermined number, and that's one and only one number. We end up with a single isoform having a single number of sialic acids corresponding to it. And then the last part of the claim. Well, the claim doesn't say, I mean, first of all, let me just lead by saying this claim is not so clear. But the claim, as you understand it, would be that a method of preparing EPO molecules having an identical predetermined number of sialic acids per molecule. And then said number selected from the group consisting of 1 to 14. The claim doesn't say that extra word identical before predetermined. So I mean, one, the alternative reading which the judge below adopted was that, yes, every molecule of the resulting EPO molecules have to have a predetermined number of sialic acids, anywhere between 1 to 14 sialic acids. So what's wrong with that understanding of this language? The word identical, of course, is not in claim 24. But claim 24 does specify identical because of the Marcouche language that said number is selected from the group consisting of 1 to 14. Right. So I guess why couldn't, why doesn't that just mean, well, every molecule has to have a particular number of sialic acids. It can't have both 2 sialic acids and 8 sialic acids. It can only have one number. And that number consists of some thing between 1 and 14. Both because of the way the claim language is put together, that the molecules have a predetermined number. And if it was going to be mixtures of numbers, some molecules having one. It's a predetermined number per molecule. I guess that's what's hanging me up, what work am I supposed to give to the phrase per molecule? Because the molecules are what's listed as having a predetermined number. And so that, if it were going to be that some molecules could have one number and some molecules could have another number, then what you would have is a situation where the claim would have to say, selected from the group consisting of 1 to 14, or mixtures thereof. Or selected from the group consisting of one or more of the numbers from 1 to 14. As a practical matter, that would also mean the claim language wouldn't really carry any meaning. Because epo molecules always have a number of sialic acids. A particular molecule won't have 2 and 4. It struck me that there is a contrast between the language used in claim 24 and the language in claim 13. Claim 13 refers to the epo consisting essentially of epo molecules having a single specific number of sialic acids per molecule, said number selected from the group consisting of 1 through 14. Whereas 24 does not have that single specific number language. Which, if it did, this wouldn't be a dispute. We wouldn't be here on this issue. That would be clear. And yet, the claim 24 sort of specifically lacks that language which would have been very easy to incorporate in 24 if the intent were to limit it to a single molecule, don't you think? Certainly the language single specific is not in claim 24 and is in claim 13. Doesn't that give rise to some suspicion, at least, that something different is intended? No, because the context of both the claim language and the prosecution history show that this claim was originally directed to mixtures, what became claim 24. And that claim was rejected over the prior art repeatedly. And ultimately, the word mixtures was taken out. It originally was mixtures of sialicate. When I looked through the prosecution history, it was unclear why the mixtures, that word, was deleted from the claim. The mixtures word was deleted from the claim because of prior art rejections over mixtures. But I didn't see anywhere in the prosecution history that explains that. I know that's what you believe. And I understand why you believe that. But I don't have anything in the prosecution history right now that necessarily forces me to think that way. Well, the examiner explained in rejecting the claim that the prior art taught mixtures. And the claim claimed mixtures. And then there was an amendment which deleted the term mixtures from the claim. Then there was also the addition of a reference to application claim 16, which really seems to drive home the idea that this claim, application claim 30, was devoted to the idea of a single and just a single isoform. But then that reference to application claim 16 got removed by the examiner and examiner's amendment. And then when you read the notice of allowance, the examiner states that the claims are direct to combinations of isoforms. And so that, you know, left me at a loss. I agree, you can find different statements by Amgen, the applicant, throughout the prosecution history that seem to make claim 30 sound like it's for just a single isoform. But then by the time we get to the finish line, Amgen stopped talking like that. And then the examiner said what he said in the notice of isoforms. So that made me wonder what exactly can we really take from any of those earlier statements if we arrive at a place that really seems to be talking about combinations of isoforms and not to just a single and only a single isoform. There are two things from the prosecution history towards the end as that change was made from claim 16 to the language that's issued in claim 16 to the language that was allowed was made at the same time that the MARCUSH, the closed MARCUSH language was added to the claim. And so therefore the concept of a single number of sialic acids was incorporated specifically into the claim by the examiner at the time that the application was allowed. There is a reference in claim 27 where you can have mixtures of two or more epo isoforms, but they are specifically isoforms of claim one. So when the examiner allowed the application, the examiner understood that all of the claims went to single isoforms. And it's just that you could have a mixture in claim 27 of two or more of those single isoforms, but you have to prepare single isoforms or you don't ever meet the limitations of claim 27. Claim 27 says they are isoforms of claim one and claim one specifies that those are isolated isoforms. And that was the other Markman error that the district court made in not permitting the language of claim one to control in reading out essentially the idea that isolated isoforms are required for claim 27. If I could just ask, I know you're moving, you want to move on to claim 27, which is fine, but I just one more question, which to follow up on Judge Chen's question, uh, the last clause, uh, of the, uh, examiner's notice of allowability set refers to, uh, the instantly claimed combinations of isoforms. It sounds, is there an explanation for that? That is not, uh, does not lead us to conclude that the examiner believed that the claim as revised, uh, uh, reads on combinations of isoforms. Claim 27 is... This is claim 24. Correct, your honor. So I'm, I, if you turn to either 5614 of the appendix or page 28 of your brief, uh, at the bottom, uh, there's that clause, and this puzzled me when I read it, uh, where the, the examiner is saying the prior art does not suggest isolation of single isoforms and does not suggest the instantly claimed combinations of isoforms. That suggests to a casual reader at least that the examiner believed that the claim as revised read on a combination of isoforms. If, if you start at the bottom of 5613 of, of the appendix, the, the examiner states that there was a, an advantage that epo compositions with single isoforms in combination, varying the number of sialic acids to control activity, and he goes on at the sentence that 5613 to 14, single isoforms are not taught by the prior art of record. That is the reason for allowance, and then he says the art does not suggest isolation of single isoforms and does not suggest the instantly claimed combinations. Right, and that's the part that is troubling me. Of single isoforms. The art doesn't suggest isolation of single isoforms or combining isoforms, because the art clearly taught, it was known all along, and the argument all throughout was that the art did come up with mixtures of isoforms. So what is your interpretation of that last clause in the examiner's assessment? So for example, claim 27 specifically claims combinations of single isoforms. So the instantly claimed combinations references, for example, claim 27. So you think this is a reference to the claims other than just claim 24 or claim 30 that became? Correct. Okay. Correct. With respect to claim 27, the requirement of isolated isoforms of claim one was read out by the district court in the Markman construction, and the second sentence of that Markman order that was given to the jury essentially specifically said you could prepare mixtures of isoforms without ever having an isolated isoform. The jury was never even shown claim one at trial. There was no evidence put in at trial that the limitations of claim one were met because the jury was sent on the wrong mission with regard to whether mixtures of isoforms, without ever having a single isoform, could be covered by the claims. When you say the jury wasn't shown claim one, I mean, I would assume that you would be arguing, pointing the jury to claim one. The jury was told that mixtures of isoforms could be infringing. So you regard that argument as being foreclosed by the claim construction? So it was the plaintiff's burden to prove that the limitations of claim one were met. They didn't do that. They didn't go through claim one and show how claim one was met. They just simply said Hospiro prepares mixtures of isoforms and went through the specific activity limitations that were in the claim without ever pointing that out. And the jury was specifically instructed that you could prepare mixtures of isoforms and meet claim 27. With regard to the safe harbor, the district court improperly focused the jury on the reasons for manufacture. I understand that you want to address a different one of those seven issues you appealed, and that is, in fact, undoubtedly the downside of raising seven separate appealable issues in briefs. But your time has definitely expired, and almost all your rebuttal time has expired. So if you continue, it's at the expense of any rebuttal time. Your Honor, and I will see the podium. May it please the court. John LaVey, on behalf of plaintiffs, cross appellants, Amgen Inc., and Amgen Manufacturing, claim 24 is not limited to isolating a single isoform. Dr. Strickland discovered that EPO produced in cells is made up of isoforms of EPO with different numbers of sialic acids per molecule, and different charges, and therefore, different biological activities. This discovery allowed Dr. Strickland- We're trying to parse the language in claim 24. So we understand Dr. Strickland invented a lot of things, but the exercise is trying to get into this claim language. Sure, Your Honor. So to focus on claim 24, the key issue here, of course, is whether claim 24 is limited to preparing a single isoform. And it's not. Nothing in the language of claim 24 limits the claim to a method of isolating a single isoform. As Judge Bryson highlighted, compare the claim to claim 13, which is directed to a composition of molecules with a single specific number of sialic acids per molecule. Also contrast with claim 23, which is a method claim. It's a very similar method claim to claim 24, but that one requires eluding a single isoform of EPO. The Marcuse group in claim 24 refers to a number of sialic acids per molecule in an isoform, as the district court found. It does not mean that every molecule prepared according to the method of the claim must have an identical number of sialic acids. Well, what do you say as to the superfluousness of the language of the claim, if, in fact, it reads the way you think it does, since all EPO molecules have a single number of sialic acids, somewhere between 1 and 14? Your Honor, we disagree. EPO molecule could have zero sialic acids per molecule. It's also possible that an analog of EPO, the claim defines EPO as including EPO analogs, which could have more than 14 sialic acids. We believe the examiner included this language, 1 to 14, in the final claim, simply to refer to those isoforms that are described in the specification and that the applicant was intending to cover by the claim. It's just being used as a shorthand to refer to isoforms, but it is limited to 1 to 14. I guess I was looking at the 298 spec at column 6, lines, I don't know, 38-39, and it says, in another embodiment, said number is greater than 14, advantageously 16-23, and so to me, that just popped out of nowhere, and I was trying to understand what is the specification communicating here about the possibility of having as many as 23 sialic acids? That's correct, Your Honor, and referring to other portions of the specification, it says that EPO, as used here, can refer to analogs of EPO. It's possible certain analogs of EPO could have more than 14 sialic acids. What I would point Your Honor to in column 6 is a line, beginning at line 46, where it of isoforms having a predetermined number of sialic acids per EPO molecule, for example, less than 12 or greater than 8, as in, for example, a mixture of 9, 10, and 11, and I highlight that language because it uses the phrase a predetermined number of sialic acids. Yes, but it also uses the word mixture. My problem, and I'm just going to lay it out for you, is that you're representing the patentee on a claim that I don't think is very clear. As to which way it should go. And I don't know, and that's a question of law that I have to decide. But throughout the prosecution, you made a number of changes. I can't necessarily say I understand the reason for all the changes, but the changes you made, you deleted the word mixture. You used to refer back to 16, which is now 13, which is undoubtedly directed to a single specific species or a single specific number of sialic. So it used to be that this is a method of preparing the things that are now identified in claim 13. And after a phone call with the examiner, the results of which I, of course, have no idea, no one memorialized it, that was eliminated. But I don't know that it was to make it broader necessarily. So you took out greater than. You took out mixture. Both of those would suggest to me you're moving away from the example in column 6, which was a mixture and towards a group of EPO molecules, all of which have exactly the same number of sialic acids attached. And then you add to that the fact that this, you said in your prosecution history that claim 24 is a method of making the molecules in claim 13. Now, granted, you took it out, but I have no idea why you took it out. So what do I do with all of that? A lot of your prosecution history points in the direction of, we're moving this claim, claim 24, away from a mixture claim and towards the same single isolated isoform that we have in the other claims. We're just using slightly different language to claim it. Your Honor, there were a number of amendments made during prosecution, but Amgen never said that it was amending the claims to limit it to isolating a single isoform. That doesn't mean that a skilled artisan wouldn't read it. I'm not using the clear and unmistakable standard because I'm not using this for disclaimer purposes. I'm using it to try to understand what the claim means, which we're supposed to do as part of claim construction. So a lot of these amendments, though, moved the claim away from a claim that clearly covered multiple isoforms. The examiner's rejections were based on prior art references that were focused on purifying EPO by separating EPO molecules from non-EPO, by removing non-EPO contaminants. And that is what the examiner was concerned about. Now, some of the amendments are a little bit unclear, but that is what the amendments were intended to focus on. You don't have to delete the word mixtures to overcome that kind of... You don't, but at the same time... So then why was that word deleted? It's not clear. As this court said in Phillips... Amgen doesn't know? We don't know. You represent the patent owner. You don't know why the word mixtures was... At the same time, the mixtures was... To answer your question, Your Honor, we do not know. It's not indicated in the file history why mixtures was removed. At the same time mixtures was removed, however, the step of selective elution was added. The step of selectively eluting the isoforms was distinguished it from the prior art that the examiner was citing. And I understood why that one was added, because that was the portion that distinguished it from the prior art based on the rejection. Exactly right. We can't figure out why the word mixture was added. And I guess in a scenario like this, with all due respect, when you have the patentee winnowing his claim down and then leaving it in what feels like a confusing state, it seems like, hmm, let's see, how should I construe that claim then? In favor of the patentee who made a lot of amendments that took it away from the position he's arguing it now should extend to? Or should I give that all back to him, even though he took those things away without any clear reason for me in the prosecution history? I would just come back to the fact by taking out the reference to mixtures, it didn't limit it to isolating a single isoform. It only meant that it encompassed both preparing a mixture and potentially preparing a single isoform. You could choose to use the method to elute a single isoform, or you could use the method to prepare a mixture of isoforms. Are you saying that by taking out mixture, you avoided the implication that single isoforms were excluded from the claim? That single isoforms were excluded? I mean, I didn't understand your last argument, but it sounded to me like you were saying, well, we took mixture out so that somebody would understand that both mixtures and single isoforms would be. I simply don't know why they took out mixtures from the language of the claim, except that there was no indication that it was to overcome the prior art. The prior art that was being cited was about purifying EPO by removing non-EPO contaminants because Dr. Strickland's inventions allowed one to... But respectfully, it doesn't matter whether they were taking it out to overcome the particular piece of prior art that was the subject of the rejection. What matters is would a skilled artisan understand that the patentee is trying to signal something about the scope of his claim by taking that word out? Because you can make an amendment for any reason you want. You can amend your claims even not in response to an examiner's rejection, right? And we're not going to say that amendment has no meaning, despite the fact that it wasn't made in response to an examiner's rejection. So I guess, what do we do with all that? Well, Your Honor, I think on balance,  and I would also like to highlight in the prosecution history, when these amendments were made, if I could point to Appendix 55, 57 through 58, the applicant, Amjad, consistently referred to the method claim, it was prosecution claim 30, as referring to a preparation of isoforms, plural, and also specifically pointed to Exhibit 5 as an example of practicing claim 30. Exhibit 5 is clearly directed to a method of preparing a mixture of isoforms, using ion exchange chromatography to prepare a mixture of isoforms. And so I see you're looking at it, let me- Exhibit 5 is in the specification? Exhibit 5 in the specification, correct. And this is referenced, Your Honor, at Appendix 55, 57 to 58. Oh, I said Exhibit 5. I should have said Example 5, Your Honor, sorry. Example 5 in the specification. There are two places in that office action response. It's at Appendix 55, 57 to 58, as well as at 55, 62 to 63, that Amjad referred to prosecution claim 30, now claim 24, as a method of preparing isoforms, plural, and specifically referred to Example 5. Can I ask you where it says that, the method of providing, of preparing isoforms, and where exactly? I'm on 55, 57 and 55, 58. If you don't have your appendix, take a minute and get it. So at 55, 57 to 58, it's at the top of page 55, 58, the paragraph there. The steps comprise applying EBO-containing material to an ion exchange column, claim 30, and selectively eluting EBO molecules, having a predetermined number of sialic acids from the column. The method is fully described in Examples 4 and 5 of the subject application. That doesn't say what you said it did. You stood there in front of us and insisted that it says isoforms, plural, isoforms, plural. It does say that elsewhere, Your Honor. Example 5, I'm pointing to Example 5. No, you told me that on page 55, 57 to 55, 58, you read the little note that the guy ran up to you. You said it said isoforms, and so I'm looking, I don't see the word isoforms anywhere in there. This is the Example 5 reference. It also refers to isoforms, Your Honor, several pages later. It refers to isoforms at APPX 55, 62 to 63. I'm sorry, what, where? So if I could just clarify, Your Honor, what I was just highlighting there was that it refers to Example 5. Example 5 is a method of preparing a mixture of isoforms. OK, later at pages 55, 62 to 63, and this is also cited in our brief, it refers to the two-step processes of the amended claims are not selectively eluding the desired isoforms. It's at the top of page 11, it's Appendix 55, 63, Your Honor. The sentence begins at the bottom, very bottom of 55, 62. Yes, Your Honor. It carries over to 55, 63. These two citations, Your Honor, are both from the same office action response. The applicants have amended Claim 30 to recite a two-step process of applying material containing IBO to an ion exchange column and selectively eluding the desired isoforms, plural. That's where it has the plural reference. I actually think the reference to Example 5 is also compelling because Example 5 is directed to a method of preparing a mixture of isoforms. OK, so maybe what I'll grant you is that you're all over the frigging place in this prosecution. You have created a prosecution history that leaves a skilled artisan with a complete and utter lack of clarity regarding the scope of your claim. To whom should that detriment inerr? Well, Your Honor, I would refer to this court's decision in Phillips that said that when the prosecution history is ambiguous, it doesn't provide much significance in interpreting the claims. And I would focus on the language. But the claim language also doesn't provide much significance in interpreting the claims in terms of this particular distinction. So suppose the court is truly confronted with a scenario where either of two equal possible definitions could apply to a claim. Which one should we choose? I think Paul Michel, in a case long ago, the name of which I don't remember, said the one that doesn't favor the patentee. I think here, Your Honor, the claim should be interpreted in the sense because it doesn't have any language like other claims. It limits it to isolating or preparing a single isoform. It does. It says a predetermined number. Now, you want me to read that to apply only to a molecule. And then there could be lots of molecules that have their own predetermined numbers. But that claim could be read either way, as far as I'm concerned. Either way, very, I mean, I could flip a coin and read it either way. Your Honor, with respect to the predetermined language, I would refer to the language in column six of the specification where it says mixtures. Right, it says mixtures. And you took that word out. You took the word mixture out of the claim during prosecution to purposefully make it confusing for the world. But it uses the term a predetermined number to refer to mixtures. And so the claim. So now you'd like me to read mixtures back in, even though you expressly took it out during prosecution? No, Your Honor. Claim 24 could cover a single, or it could cover a mixture of isoforms. The examiner was concerned with the method steps, and in particular, the method of selectively eluding the isoforms. So now are you back to the argument that Judge Bryson questioned you on long ago, where you took the word mixture out in order to make it clear that Claim 24 applies to both mixtures and single isoforms? Again, Your Honor, I don't think it's clear why that language was taken out, except that I think the implication of it is that, yes. Your Honor, it's not clear. And so that's the problem. It leaves the world without clarity from the prosecution history. Because for particular office actions or particular sections, I could, in the absence of the rest of the prosecution, absolutely read them to, quite frankly, favor limiting this to single isoforms. But then you add some complexity to that by pointing out other places where, in arguments, you added the word isoforms with a plural. I believe, Your Honor, that throughout the file history, Amgen consistently referred to the claim as a method of preparing isoforms plural. I pointed to that one office action. I apologize that there was some confusion about what I was pointing to there. Well, you can't say that Amgen's invention is preparing isoforms plural, because more than half of your claims are directed to single isoforms. So it's not isoforms plural. Well, many of the claims are directed to isolating a single isoform, but not all. And the specification, throughout the specification, and particularly the language at the bottom of column six, makes it clear that the claims are directed to preparing both isolated as well as mixtures of isoforms. The point of the invention. Is it your view that claim one would be limited to a single isoform? Yes, Your Honor. Judge, the district court did construe claim one. The isolated language in claim one is limiting claim one to preparing one and only one isoform. That language doesn't appear in claim 24. The specification consistently refers to the invention as one being able to select isoforms. Not just one isoform, but being able to. Dr. Strickland's invention was that he could select specific isoforms to include in a composition to give the composition a specific biological activity. Prior to Dr. Strickland's inventions, it wasn't possible to separate molecules of EPO to separate isoforms of EPO based on their charge. He made the correlation between content of sialic acid and isoforms in order to enable this method of selecting isoforms. But it's not just selecting a single isoform. It's potentially selecting a mixture of isoforms with a predetermined in vivo specific activity. OK, you are well beyond. Can we get to claim 27? Sure. I'd like to hear about claim 27. The failure to reference claim 21 at the jury trial, as well as what to take away from the meaning of the word isolated in claim 1, and how that impacts, if at all, the preparation of the mixture as recited in claim 27. I can address both of those issues, Your Honor. And with respect to the first issue, I might just point you to page 28 of our brief where we cited the evidence that proved infringement of the remaining elements of claim 1. It wasn't the focus of the trial, admittedly. But there was evidence before the jury with respect to the other elements of claim 1. Hasbira's point here really is about isolated. And whether isolated is part of claim 27. Claim 27 is a methoded claim. The district court construed it as an independent method claim, which Hasbira doesn't dispute on appeal. The reference to epo isoforms of claim 1 is simply to describe the types of isoforms that could be included in the mixture prepared according to claim 27. Because it's a mixture, it doesn't mean that the isoforms need to be separately prepared. The district court simply said that the isoforms don't need to be separately prepared before preparing the mixture. At the bottom of column 6, the specification describes multiple ways of preparing a mixture by first isolating the isoforms, or by preparing the mixture using ion exchange chromatography to prepare a mixture of isoforms with a certain number of sialic acids. But this says the mixture of the claim 1 things. So the claim 1 things are each individual, each have individual numbers of sialic acids, right? That each have individual, and that is required by claim 27, that each have individual numbers of sialic acids. It has to be those isoforms. It has to be isoforms with between 1 and 14 sialic acids per molecule, for example. It has to be a mixture of those isoforms, not a mixture. It has to be a mixture of two different isoforms, each of which are starting out with a different number of sialic acids, doesn't it? I think I agree with that, Your Honor, except that they don't have to be separately prepared. Because claim 27 is a method claim, and it does not include a method step of separately preparing the isoforms, nor does claim 1. If I said I was going to hand you  expect that to be salt, and then pepper, and then I mixed them together and gave them to you? Yes, but Your Honor, it's a method claim. So if it were a method of preparing a mixture of salt and pepper, it wouldn't necessarily mean that you need to have salt and pepper purified in advance. You could prepare the mixture directly. There was some method that a skilled artisan would know that you could prepare a mixture of salt and pepper without first separating them. And that's what we have here, is that using ion exchange chromatography, you can prepare a mixture of isoforms without first separating them. And that's described between columns 6 and 7 of the specification. But the claim 27 doesn't require the method by which they're going to be made. It doesn't limit it to the ion chromatography. Well, that's correct, Your Honor. It doesn't require a particular method to be used. And so by that token, it doesn't require that they be separately prepared and then mixed. They could be, if there were some way, which there is, of preparing a mixture. It only requires the preparation of a mixture with a predetermined in vivo specific activity, which was enabled by the invention. It only requires that that mixture be prepared. It doesn't have a method step of separating the isoforms. And nor does claim 1. Claim 1 doesn't have any method step. So that's just bracing. Well, I was just going to ask about, I think you referred to the bottom of column 6, but I didn't get your precise reference. But there is a sentence at the bottom of column 6, line 61 through about line 63. And I wanted to see if that's consistent with what you're saying now. You say, well, let me read the sentence. In order to produce mixtures of EPO isoforms, this invention also provides methods of isolating selected EPO isoforms simultaneously. Is that what you're saying, is that you can have isolation of more than one at a time? That's part of the language. It's really that entire paragraph that I would point to taken together. So it's that sentence followed by the techniques that are then described. It says, the methods include isolation of individual isoforms or preparation of mixtures of isoforms. Continuing to the next column, by techniques such as ion exchange chromatography. The second part of that paragraph seems to be not necessarily helpful to you. Because what I was focusing on was the use of the term isolating simultaneously, which suggests that this doesn't require that the one isoform be at any point in the discrete portion of the composition. We do understand it that way, Your Honor. And I only cite the rest of the paragraph as describing multiple ways. You could isolate and mix, or you could just prepare a mixture. But I agree, Your Honor, that the first sentence suggests that isolation could occur simultaneously. It's a somewhat unusual use of the term isolation. But if that is indicative of the way it's used in the claims, then that may be of use. It's an unusual use of the term isolation. But the point of Claim 27 is to prepare a mixture where those isoforms are separated from other isoforms, which enables you to prepare the mixture with a predetermined in vivo specific activity. You have to prepare the specific mixture to have the predetermined in vivo specific activity, which is what Dr. Strickland discovered and allowed him to invent these methods. All right. I think that we need to bring this to a close. Thank you, Your Honor. Thank you. Mr. Maloro, I'm going to give you all five of your rebuttal minutes back because he went on and on at the response to questions, to be clear. But yes, he did beat up a lot of time. So we're going to give you all your rebuttal time back. But I do caution you that rebuttal is to respond to arguments that were addressed by the other side. So with all due respect, you are now limited to Claim 24 and 27. And since he never reached any of the other issues you appealed, those are off the table. Yes, Your Honor. Thank you very much. Unless one of my colleagues wants, really wants to know the answer to one of them, in which case I'll defer to them. Thank you. I'd like to start with the prosecution history and pick up where counsel left off, which was the amendment from October of 1993 and the elimination of the mixture term. And there were some references in that amendment to Example 5 and to isoforms, which counsel pointed out. But what happened then was the claim was rejected again. And so the claim was then even more specifically directed in the next amendment to single isoforms. And that was by putting in the reference specifically to Claim 16. So what we had at that point was any ambiguity about mixtures was gone once the next amendment came in after the next rejection came in. And we had a claim. By the way, it was counsel's law firm that was prosecuting the application. We had a claim that was specifically directed to a single isoform by reference to according to Claim 16. And then that reference got removed. And then that reference got removed with the examiner's amendment. And it was essentially swapped out for the closed Marcouche language, which has the same effect. But that's your interpretation of that. It's not so clear that it's this kind of one-for-one swap that you would make it out to be. We would submit that when you look at the claim language itself, and keeping in mind the Abbott admonitions about closed Marcouche language, and that if you want to say mixtures, you have to specify it in the claim language. There was no reference to putting mixtures in in the closed Marcouche language. And in fact, the references which Judge Bryson pointed out in the examiner's reasons for allowance talked specifically about the single isoforms and the instantly claimed combinations. Not mixtures, combinations. Combinations is a different concept from mixtures. Claim 27, for example, does claim combinations of single isolated isoforms. And that reference, if there was to be a C change. I don't know. It says preparing a mixture. It doesn't say preparing a combination of isoforms. That's correct, Your Honor. So you're right that the examiner said combinations of isoforms. But I don't know if that means you can make a distinction between combinations and mixtures. If there were to be a C change at that moment, away from the claim 16 language, which was, as everyone agrees, directed to a single isoform. If claim 30, which over all these years had been narrowed down to, by May 3rd of 1994, be seriously and specifically claiming a single isoform, and then through examiner's amendment was going to be now broadened out to what had been rejected over all those years, one would have expected to have seen some clear, I've changed my mind. In fact, you are entitled to mixtures. And I'm reopening the claim to something that's not mixtures. Instead, what the examiner did was require this closed marcouche language. Closed marcouche language, which if it were to be directed to mixtures, would have been required to either use the word mixture or use some other phraseology, like one or more of, to make clear to the public when they looked at that marcouche language that it was intended to cover more than one of the number of sialic acids. Having not done that, we're not just left with a record that's muddled and who should bear the burden. But we're left with case law that says it is absolutely incumbent on the patent team when they want to claim mixtures in a closed marcouche claim to put mixtures into that claim. Now, with respect to Claim 27, Claim 27 is directed to isoforms of Claim 1. Isoforms of Claim 1 is a requirement for proving infringement of Claim 27. Now, we do not contest on this appeal the independent nature of Claim 27.  of claims, independent claims, are optional in terms of proofs. And the isolated isoforms of Claim 1 are what's required for proof on Claim 27. If they wanted to claim just mixing two or more isoforms, they had every opportunity to do that. Instead, they chose to claim two or more isolated isoforms. OK, thank you, Mr. Maloro. I thank both counsel. The case is taken under submission.